

**Moritt Hock & Hamroff** LLP
ATTORNEYS AT LAW

**Stephen J. Ginsberg**
Direct Dial: (516) 880-7219
Email: sginsberg@moritthock.com

May 5, 2017

**VIA ECF**

The Honorable Leonard D. Wexler
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re:    **Anthony Notaro, et al v. Uncle Chuck's Corporation, d/b/a Uncle Chuck's Sports Bar and Grill, Marvin Feilhardt, an individual and Karen Feilhardt, an individual**
           **Case No.: 17-CV-00176 (LDW)(SIL)**

Dear Judge Wexler:

    Moritt Hock & Hamroff LLP represents Defendants Uncle Chuck's Corporation, d/b/a Uncle Chuck's Sports Bar and Grill ("Uncle Chuck's" or the "Company"), Marvin Feilhardt ("Marvin") and Karen Ross ("Karen," incorrectly sued as Karen Feilhardt) (collectively, "Defendants") in the above-referenced action. Plaintiff alleges violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). I am pleased to report that the parties have reached a proposed settlement agreement that, if approved by the Court, would dispose of all claims in this action. Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015), *cert. denied,* 136 S. Ct. 824 (2016), I write this letter in conjunction with Plaintiff's counsel, The Rose Law Firm, PLLC and the Law Offices of David H. Rosenberg, P.C., to explain the basis for the proposed settlement, including its provisions for attorneys' fees, and why the Court should approve it as fair and reasonable.[1] The parties also jointly request that the Court extend Defendants' time to respond to the Complaint to a date set by the Court, if necessary, after the Court rules on this application.

---

[1] A copy of the proposed settlement agreement is annexed to this letter as <u>Exhibit 1</u>.

Page 2 of 6
The Honorable Leonard D. Wexler
May 5, 2017

## I. Background

Uncle Chuck's is a small restaurant and bar and grill located in West Islip, New York. It commenced operations in May 2016 and currently employs approximately five (5) employees.[2] It is solely owned by Marvin, who is also the Company's President. Karen is Marvin's wife and an employee of Uncle Chuck's.

Plaintiff Anthony Notaro ("Plaintiff" or "Notaro") commenced this lawsuit on January 12, 2017. The Complaint alleges, among other things, that he was not paid for overtime that he worked while employed by Uncle Chuck's or the minimum wage. Notaro alleges that Uncle Chuck's hired him in April 2016, where he worked until August 2016. Notaro alleges he was paid $15.00 per hour; worked six (6) days per week (12-14 hours per day); and assisted with the service and preparation of food. Notaro asserts claims under the FLSA and NYLL.

The parties engaged in settlement negotiations both before and after the filing of the Complaint. The parties reached an agreement in principle during the latter part of February 2017. The parties have now reduced their settlement to an agreement and request that the Court approve it for the reasons set forth herein.

## II. The Proposed Settlement is Fair and Reasonable

Pursuant to *Cheeks*, when parties settle FLSA claims with prejudice the settlement must be approved by the court. *See Cheeks*, 796 F.3d at 206. To warrant such approval, the parties must satisfy the court that their agreement is "fair and reasonable." *Flores v. Food Express Rego Park, Inc.,* No. 15-cv-1410 (KAM), 2016 U.S. Dist. LEXIS 11351, at *2 (E.D.N.Y. Feb 1, 2016); *Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In making this determination, the court considers the "bona fides of the [parties'] dispute," including (1) "the plaintiff's range of possible recovery"; (2) "the seriousness of the litigation risks faced by the parties"; (3) "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses" that would be incurred if they proceeded with litigation; (4) "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) whether there is "fraud or collusion." *Wolinsky,* 900 F.Supp. 2d at 335; *Flores,* 2016 U.S. Dist. LEXIS 11351, at *3-4.

---

[2] For this reason, notwithstanding the class allegations, the case does not satisfy the numerosity requirement of Fed.R.Civ.P. 23. Nor have any employees opted into a collective.

Page 3 of 6
The Honorable Leonard D. Wexler
May 5, 2017

Each of these factors militates in favor of court approval of the parties' settlement agreement here, which provides for a settlement payment by the Defendants to Notaro in the amount of $4,500.[3] Considering the first factor, Plaintiff's range of possible recovery is extremely limited for several reasons.

First, Uncle Chuck's is not subject to the FLSA, which is the sole basis for jurisdiction alleged in the Complaint, since Uncle Chuck's has not generated an annual gross volume of sales in excess of $500,000.00.

Second, notwithstanding Notaro's allegations that he began working for the Company in April 2016 (a time before Uncle Chuck's opened for business), upon further investigation Plaintiff now agrees that Notaro only worked for Uncle Chuck's for 10 weeks (from approximately May 23, 2016 through August 7, 2016) and was paid $15.00 for each hour that he worked. Thus, the only amount of time that Notaro is alleging he was underpaid is for the over-time differential amount of $7.50 per hour for each hour in excess of 40 that he worked during a week. Accordingly, even if Notaro had worked 6 days per week, 14 hours per day, during his 10 weeks of employment at Uncle Chuck's (which Defendants dispute), Notaro's maximum damages would be approximately $3,300.00. This calculation is based on 14 hours per day, multiplied by 6 days per week (6 x 14 = 84), minus 40 hours of work each week before overtime must be paid (84 – 40 = 44), multiplied by $7.50 (representing the over-time amount that Notaro allegedly was not paid), which amount equals $330.00 per week. This alleged $330.00 per week underpayment is then multiplied by 10, the number of weeks Notaro worked at Uncle Chuck's, for a total claimed wage underpayment of $3,300.00.

However, as counsel for the Defendants has contended throughout the parties' settlement negotiations, if litigated the evidence in this case would not support Plaintiff's alleged hours. Time sheets signed by Notaro during his employment reflect that during 7 out of the 10 weeks that he worked at Uncle Chuck's, he only actually worked an average 52.00 hours per week: 51.5 hours; 47 hours; 34 hours; 43 hours; 44.5 hours; 48.5 hours; and 57.5 hours respectively according to the 7 time sheets -- a total of 326.00 hours and an average of 46.57 hours per week. According to these time sheets, Plaintiff worked 52.00 overtime hours

---

[3] Defendants have paid additional consideration to the Plaintiff for a general release. This is permissible. *See Abrar v. 7-Eleven*, 14-cv-6315 (ADS), 2016 U.S. Dist. LEXIS 50416, at *3 (E.D.N.Y., April 14, 2016); *Panganabin v. Medex Diagnostic & Treatment Ctr.*, 15 Civ. 2588 (AMD), 2016 U.S. Dist. LEXIS 29158, at *8 (E.D.N.Y., Mar. 7, 2016).

Page 4 of 6
The Honorable Leonard D. Wexler
May 5, 2017

during this 7-week period, an average of 7.43 overtime hours per week. If extrapolated over the duration of his employment, this is a total of 74.30 overtime hours, and, at $7.50 per hour, results in an alleged underpayment of $557.25. Even if Plaintiff were to obtain liquidated damages on this amount, the total would be $1,114.50.

Third, even these modest alleged wage underpayments are subject to factual defenses. For example, Marvin and other employees (each of whom worked along-side Notaro on a daily basis) would likely provide testimony substantially undermining Notaro's claimed overtime hours.

Defendants also acknowledge litigation risks and therefore have an incentive to settle as well. Even if the Court were to dismiss Plaintiff's FLSA claims on the basis that Uncle Chuck's is not subject to the FLSA, Plaintiff could pursue wage claims in state court under the NYLL. Notwithstanding the existing time sheets, should the matter proceed to trial, a jury could credit Plaintiff's testimony.

Regarding the third, fourth and fifth *Wolinsky* factors, both sides recognize that the proposed settlement agreement enables them to resolve this case at a relatively early stage of the litigation process and thereby avoid the anticipated risks, burdens and expenses of litigating this case through a jury trial and potential appeals, including avoidance of costs associated with document exchanges, depositions and motion practice.

Finally, the parties' proposed settlement agreement is a product of arm's-length bargaining between experienced counsel and in the absence of any fraud or collusion.

Accordingly, this Court should approve the parties' proposed settlement agreement as both fair and reasonable in light of the circumstances of this case.

### III.     The Attorney's Fees Are Fair and Reasonable

The parties' proposed settlement agreement provides for attorneys' fees for Plaintiff's counsel in the amount of $1,366.67 plus costs in the amount of $400.00. This amount is 1/3 of the settlement amount net of attorneys' fees, a percentage routinely approved in post-*Cheeks* FLSA settlement agreements in the Second Circuit. *See Escobar v. Fresno Gourmet Deli Corp.*, 16 Civ. 6816 (PAE), 2016 U.S. Dist. LEXIS 166811, *9 (S.D.N.Y. Dec. 2, 2016); *Santos v. Yellowstone Props.*, 15 Civ. 3986 (PAE) 2016 U.S. Dist. LEXIS 61994, *9-10

Page 5 of 6
The Honorable Leonard D. Wexler
May 5, 2017

(S.D.N.Y. May 10, 2016); *Abrar*, 2016 U.S. Dist. LEXIS 11351, at *6-7 (E.D.N.Y. Apr. 14, 2016).

It is also far less than Plaintiff's counsel have stated they would receive under the lodestar amount. Plaintiff's attorneys have explained they performed drafting work, performed an initial investigation, pursued a potential opt-in plaintiff which did not materialize, researched potential defenses, spoke with Defendants' counsel on multiple occasions and engaged in settlement negotiations. Plaintiffs' counsel estimates that Jesse Rose spent at minimum five (5) hours working on the case. If Mr. Rose was provided only the $375.00 per hour he states the Southern District Court awarded him following trial in *Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511 (S.D.N.Y. 2015) then the attorney fee award would be $1,875.00. This does not count the time expended by David Rosenberg, Esq. or any of the paralegals and support staff working on the case. The attorneys' fees are reasonable considering these factors and should be approved by the Court. Further, the costs are justified as the full $400.00 was expended by Plaintiff's counsel and that amount is deducted before the calculation of the attorneys' fees were calculated.

### IV.     The Non-Monetary Terms of the Settlement Agreement are Permissible

The settlement agreement the parties ask the Court to approve has been drafted with the intent of complying with the requirements of *Cheeks* and subsequent case law in the Second Circuit. The settlement agreement does not seek a broad, general release of all claims, but rather is limited to a release of Plaintiff's wage claims under the FLSA and New York law. *See Martinez v. Gulluoglu LLC*, No. 15-cv2727 (PAE), 2016 U.S. Dist. LEXIS 5366, at *3-4 (S.D.N.Y. Jan. 15, 2016). The settlement agreement does not contain a confidentiality provision. The settlement agreement does contain mutual non-disparagement provisions, but these provisions contain a carve-out for truthful statements and therefore are permissible. *Id.*, at *3.

For the foregoing reasons, the parties respectfully request that the Court approve the proposed settlement agreement as fair and reasonable and dismiss this action with prejudice. Counsel for the parties are also available at Your Honor's convenience to address any questions or concerns the Court may have concerning this application for settlement approval.

Page 6 of 6
The Honorable Leonard D. Wexler
May 5, 2017

    By executing this letter below, Plaintiff's counsel acknowledges that it has reviewed this letter and the incorporated proposed settlement agreement, approves of their contents and joins in this application.

Respectfully submitted,

*Stephen J. Ginsberg*

SJG:mv
Encl.

### REVIEWED AND APPROVED

The Rose Law Firm, PLLC
*Attorneys for Plaintiff Anthony Notaro*

By: *Jesse C Rose*
    Jesse Rose, Esq.
31-09 Newtown Avenue, Suite 309
Astoria, New York 11102
(718) 989-1864
jrose@theroselawgroup.com


The Law Office of David H. Rosenberg, P.C.
*Attorneys for Plaintiff Anthony Notaro*

By: 
    David H. Rosenberg, Esq.
170 Old Country Road, Suite 600
Mineola, NY 11501
(516) 741-0300
drosenberg@employeelawny.com

1097435v1